HERMAN G. REINAGEL v. WALNUTS RESIDENCE COMPANY, A CORPORATION.—194 S. W. (2d) 229.

Kansas City Court of Appeals. April 22, 1946.

702

*Cowgill & Popham, A. C. Popham,* and *Sam Mandell,* for appellant.

*Nelson E. Johnson, R. R. Brewster, R. R. Brewster, Jr.,* and *R. T. Brewster,* for respondent.

SPERRY, J.,—This is a personal injury suit by Mr. Reinagel, plaintiff, against Walnuts Residence Company, a Corporation, defendant. Plaintiff had a judgment in the amount of $6,000 and defendant appeals.

Defendant operated a large apartment hotel in Kansas City and, in connection therewith and as a part of its service to its tenants, it maintained and operated a garage in the rear thereof. At the time plaintiff received the injuries complained of, and for seven years prior thereto, he was employed by Mrs. Croysdale, a tenant of defen-

dant, as her chauffeur. His duties required him to park his employer's automobile in defendant's garage and to drive it to and from the garage from time to time.

Plaintiff's evidence was to the effect that the garage is built partially under the apartment hotel but extends out therefrom under a patio and garden. It is entirely underground and while there are a number of small windows they are set in "wells" and admit very little light. It is about 175 feet long, from east to west, and has two driveways, known as "North" and "South." On the north side, against the wall, is a row of eight or ten stalls, into each of which automobiles are backed against a concrete island. South of this row of cars is another concrete island, known as the center island which extends the length of the building, from a point south of and near the entrance, which is located on the north side and near the east wall. This center island is of concrete, rising some six or eight inches from the level of the floor, about six feet wide, its sides declining to the floor at an angle not perpendicular. Cars are backed into stalls so that, when parked, they are back to back. The north drive runs between two rows of cars facing each other; and the south drive runs south of and across the front of the cars parked along the south side of the center island. There is also a row of cars parked along the south wall, facing the south drive. At the garage entrance, near the north-east corner, was located a chauffeurs' room.

At the time the casualty occurred the Croysdale car was parked in a stall regularly assigned for its accommodation, located on the south side of the center island against which it was backed, and facing the south drive. No natural light ever came in contact with the space in the rear of the Croysdale car. The lighting system of the garage consisted of reflector lights in the ceiling, and of drop lights hanging over the center of the center illand, one of which was in the rear of the Croysdale car. It was put on and off by pulling a cord. In order to pull the cord it was necessary to stand on the island. The lighting system was controlled by master switches located in the chauffeurs' room, to which plaintiff had no access. When plaintiff was first employed by Mrs. Croysdale the lights in the garage were kept on; but for five years immediately prior to the accident the garage lights had been kept off excepting when turned on by one of defendant's employees in the chauffeurs' room where the switches were located. Plaintiff himself could turn on the drop light if the current was not cut off of that circuit. Plaintiff was prohibited from operating the switches but he could ask an attendant to do so. Frequently, however, there would be no one in the chauffeurs' room to perform that service, the regular garage employees not being present but out of the garage in the performance of other duties. Without electric lights the garage was dark. Chauffeurs were required to turn on their headlights when driving in. Plaintiff had vainly pro-

tested the lack of sufficient, or any adequate lighting of the garage. If he left the drop light on, defendant's servants always turned it off so that it would not be burning when he returned for the car.

Plaintiff entered the garage, at the regular car entrance, on a Sunday morning, to get Mrs. Croysdale's car. He walked west, along the north drive to a point opposite the car. All lights were off. He could see, as he walked along the drive, but it was pitch dark in the stall where the car was parked and he could not see the island. He approached the stall and placed his right foot on the island. He thought his foot was solidly planted and lifted his left foot to step upon the island so as to reach the drop light. His right foot slipped and threw him down, thereby causing his injuries.

At the close of plaintiff's evidence defendant moved for a directed verdict, which motion was overruled. Defendant offered no evidence. It is urged that the motion should have been sustained because plaintiff's evidence failed to prove defendant guilty of any actionable breach of duty.

Plaintiff submitted the case on the theory that defendant was negligent in failing to light the garage and space in rear of the car because the garage was inherently dangerous and constituted an undue hazard unless lighted.

Plaintiff contends, and defendant tacitly agrees, that defendant's duty to plaintiff is governed by the law applicable to landlord and tenant. Plaintiff, being an employee of defendant's tenant, occupies the same relationship to defendant that Mrs. Croysdale occupied. [Darlington v. Railway Exchange Bldg., 183 S. W. (2d) 101, l. c. 105.]

It is a well settled rule of law that where premises are let to several tenants, as was done in this case, and where said tenants use certain portions thereof in common, such as halls, stairways, entranceways, and the like, such portions of the premises are held to have been reserved by the landlord for the common use of the tenants and he is in control thereof and is liable for their maintenance, care, and reasonable safety. Where the landlord has undertaken to light said premises then he must exercise reasonable care to properly light them and is liable for any injury caused by his negligence in this regard. [Daelington v. Railway Exchange Bldg., 183 S. W. (2d) 101, l. c. 105, *supra;* Barber v. Kellogg, 111 S. W. (2d) 201; Barber v. Kellogg, 123 S. W. (2d) 100, l. c. 102.]

The landlord is not required, absent agreement or statute, to furnish lights in halls, stairways, entranceways, and passages used in common by a number of tenants, *unless* the premises are inherently dangerous by reason of construction. Shearman and Redfield, Law of Negligence, 1941 Ed. 1809. Lambert v. Jones, 339 Mo. 677, l. c. 690; 98 S. W. (2d) 752, l. c. 760; Darlington v. Railway Exchange

Building, *supra*, 183 S. W. (2d) 101, l. c. 105; but if there is such a condition the landlord is required to furnish lights.

If a landlord assumes the duty of lighting, although not required so to do, he is bound to perform the duty with reasonable care and prudence or be liable for his negligence in failing so to do. He may, however, discontinue lighting on reasonable notice.. [Barber v. Kellogg, 111 S. W. (2d) l. c. 204.] Here the evidence is to the effect that defendant assumed the duty of lighting the garage and performed that duty during the first two years of plaintiff's employment, but this service was discontinued, and plaintiff knew thereof, some five years before the accident occurred.

There is no evidence in the case tending to prove that the construction of this garage, with reference to the island and the stalling of cars was different from that obtaining generally in garages in this community, or that it constituted an unusual hazard or was inherently dangerous. We cannot hold that the garage, as constructed, is inherently dangerous.

However, according to the evidence, defendant maintained a drop light in rear of the Croysdale car. A fair inference to be drawn from plaintiff's evidence is that the light was maintained in order to guide the automobile into the stall and to allow the driver to get into the stall to take the car out. That is the effect of his testimony on the point. The evidence further discloses that when plaintiff was first employed, and for two years thereafter, defendant required the drop light to be on at all times but that, some five years prior to the accident, it required the light to be extinguished when plaintiff was not there. Defendant's employees would pull the cord and extinguish the light, and it was always out when plaintiff would come after the car.

Having assumed the duty of furnishing the light bulb to be turned on by plaintiff for the purpose of getting into the stall in order to get the car out, defendant may be liable for negligently failing to provide a method of turning on the light without plaintiff being compelled to enter on the island in the dark. We do not hold that the evidence establishes negligence as a matter of law; but a jury might well find that ordinary care required defendant to provide some more convenient an dless hazardous method of turning on the light, if the method provided was hazardous, and that failure so to do constituted negligence. [Barber v. Kellogg, 123 S. W. (2d) l. cl 102.] This theory of negligence was not advanced in the trial court.

The judgment should be reversed and the cause remanded. *Boyer, C.*, concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded. *Bland, P. J., Dew, J.*, concur; *Cave, J.*, dissents in separate opinion in part; concurs in result.

708

I cannot agree that the evidence in this case proves, as a matter of law, that the garage, as constructed, is not inherently dangerous. Plaintiff's evidence is to the effect that the part of the garage which he was required to use, and had the right to use, was "pitch dark" when the electric lights were not on, and that in that section of the garage there was an abrupt elevation from 6 to 8 inches in height, referred to as "the island." It is my opinion that it would be a question for the jury whether this abrupt elvation, so located, would constitute an inherently dangerous condition such as would require the defendant to provide sufficient light to expose the obstruction.

The general rule applicable to the facts in this case is well stated in 32 Am. Jur., p. 576, Sec. 701, where the author declares:

"The common-law liability of a landlord for the safe condition of approaches to, and the stairs and hallways in, premises used in common by different tenants, does not *ordinarily* require him to keep the *ordinary* halls and stairways lighter, and hence he is not *ordinarily* liable for injuries received by reason of the unlighted condition of this portion of the premises. However, if *the construction of a stairway is such as to require artificial light, even in ordinary times, in order to make the use of the hall and stairway safe, the landlord may be held liable for negligence in failing to keep it lighted.* Likewise, where the landlord assumes the duty of keeping a hall or stairway lighted, he is liable for personal injuries due to the unlighted condition of the hall, if that condition is ascribedable to his negligence." (Italics supplied.)

In Lampert v. Jones, 339 Mo. 677, the Supreme Court discussed at length the duty of a landlord to keep lighted common passageways for the benefit of tenants and visitors or employees, and held that the landlord in that case was not liable because (690):

"Second: There was no evidence sufficient to show any condition inherently dangerous in the *construction* or *arrangement* of this stairway, and there was no unguarded elevator well or other hole, trap, or *dangerous obstruction* therein from which a duty to light the stairway might arise whether he assumed it or not." (Italics ours.)

It is my opinion that the evidence in the present case makes an issue of fact whether the condition of the garage floor was an inherently *dangerous arrangement,* because there was a *dangerous obstruction,* hidden by darkness, immediately in the path of those who were required and expected to use that part of the garage.

The fact that the plaintiff knew of such condition would not be decisive of the question whether the arrangement was inherently dangerous. Such knowledge should be considered only in connection with the question of contributory negligence and the assumption of risk.

I do not understand that plaintiff's instruction No. 1 submits his case on the theory that the construction and arrangement, without lights, created an inherently dangerous condition, but rather submits it on the theory that the defendant had *assumed* the duty of furnishing necessary lights and negligently failed to do so. Therefore, his judgment could not be affirmed, even on my theory, because it was not so submitted to the jury. I concur in the final result reached in the majority opinion.