Albert ULLRICH, (Plaintiff) Appellant,

v.

Charles KINTZELE and Rollie Kintzele, His Wife, (Defendants) Respondents.

No. 29555.

St. Louis Court of Appeals. Missouri.

Jan. 3, 1957.

Motion for Rehearing or for Transfer to Supreme Court Denied Feb. 1, 1957.

Philip A. Maxeiner, Lewis, Rice, Tucker, Allen & Chubb and Cleo V. Barnhart, St. Louis, for appellant.

F. X. Cleary, C. M. Kirkham and Moser, Marsalek, Carpenter, Cleary & Carter, St. Louis, for respondents.

MATTHES, Judge.

Following a verdict and judgment in favor of plaintiff for $7,500 for personal injuries, defendants' motion for judgment in accordance with their motion for a directed verdict was sustained on the ground "that the evidence wholly failed and was insufficient to show any negligence on the part of defendants". Judgment was thereupon rendered in favor of defendants, from which action plaintiff has appealed.

We find no controversy or dispute in regard to the factual situation. Plaintiff occupied one of the units in a six-family apartment building located at 3427 Shenandoah, an east and west street in St. Louis, Missouri. The defendants owned this property and also occupied one of the units in the apartment building. To the rear and north of the building there was an open area referred to as the back yard, which was used in common by all occupants of the building. A walkway divided the back yard and extended from the rear of the building northwardly to the alley. Situated to the east of and adjacent to the walkway was a building used as a garage. The garage extended "right up to the alley line". To the west of the walkway the yard extended to the alley, where it terminated at an elevation of approximately five feet above the surface of the alley. A retaining wall approximately five feet high formed the north boundary of the west part of the back yard, and this wall also constituted the south side of the alley. A series of steps extended from the walkway downward to the alley. Defendants purchased the property in 1950 or 1951. Thereafter and prior to the time plaintiff moved into the building, Mr. Kintzele erected a fence across the rear part of the west half of the back yard, which extended from the walkway westwardly to the west property line. This fence was placed about five feet south of the retaining wall, and created an area approximately five feet deep (north and south), and approximately 18 or 20 feet long (east and west). Section 20 of Chapter 27 of the Ordinances of the City of St. Louis relating to garbage receptacles provides:

"The owner, trustee, lessee, agent, tenant or occupant of any premises having an alley entrance shall place conspicuously at the alley entrance to such premises the house number thereof in figures not less than two inches high and shall place the garbage receptacle for the premises within five feet of the alley line. If there be no alley, or if the same be impassable for vehicles, then the commissioner of refuse collection may designate the nearest

convenient place where the garbage receptacle for such premises may be placed and maintained and where the garbage therefor shall be deposited."

After the area was created, cans containing garbage and trash would be placed by tenants therein in order that the city's garbage and trash collectors could pick up and collect garbage and trash. It was the practice of the city for the period of three years that plaintiff lived in the property prior to his injury to collect the garbage three times, and the trash once, each week. The record does not disclose the height of the cans, but photographs taken the day following the occurrence in question indicate that the trash cans were approximately 30 to 36 inches in height, and the garbage cans approximately half the height of the trash cans. After the garbage and trash collectors had emptied the contents of the cans, they would throw the empty cans back into the area, and frequently the lids from the cans would be scattered about on the ground. Following the removal of the contents, the empty cans would be taken to a space provided for that purpose on the back porch of the building, and there they would remain until the appointed day, when they would again be placed upon the top of the retaining wall. Plaintiff testified that "pretty frequently" he saw particles and pieces of garbage, rubbish, refuse, or debris on the ground in the vicinity of the designated area, however on cross-examination he stated that "as a rule" Mr. Kintzele "kept that place back there in good condition * * * clean".

On March 1, 1954, plaintiff was in the alley to the rear of the property, and observed that a collection of garbage and trash had been made that day. He saw five or six garbage cans and four or five trash cans laying "on their sides" in the area between the rear fence and the retaining wall, with the lids off and "strewn around". He proceeded up the rear steps and into the area for the purpose of picking up his garbage can and lid. He had previously put the can where it was within easy reach of any one standing in the alley, as he had learned that the trash collectors "won't go back in the yard and get it". The empty can was about midway between the retaining wall and the rear fence—two and a half or three feet south of the wall, and about two-thirds of the distance from the rear steps to the west boundary of the property. He was thoroughly familiar with the entire area, including the retaining wall. After picking up his receptacle and lid, he turned completely around and started back towards the walk. At that time he "slipped or stumbled on something", and then because he was unable to control his movements, he stepped on the garbage can lid, lost his balance, and fell into the alley. Plaintiff testified that he landed on both heels, causing the bones therein to be fractured.

By verdict-directing instruction No. 1, given at the request of plaintiff, the jury was informed that the defendants owed the plaintiff the duty to exercise ordinary care to maintain that portion of the rear yard situated between the alley and the rear fence in a reasonably safe condition for plaintiff and other tenants for use in connection with the disposal of trash and garbage, and to take such reasonable precautions against injury to any one so using such area as an ordinarily careful and prudent person similarly situated would have taken under the same or similar circumstances. In substance, the hypothesized factual situation submitted to the jury and which authorized a verdict was: That particles of trash, refuse or garbage and lids from the cans were on occasions in such area and in close and dangerous proximity to the retaining wall; that by reason thereof there existed the probability or likelihood that some one using such area would slip or stumble and fall to the surface of the alley; that an ordinarily careful and prudent person, in the exercise of ordinary care, would have reasonably anticipated and foreseen such probability of injury occurring, and would have erected a sufficient banister or railing on top of the re-

taining wall across the rear of the yard and thereby would have prevented plaintiff from falling to the surface of the alley.

It is strenuously urged by able counsel for plaintiff that because of the location and the use made of the area adjacent to the alley, the submission of the case on the theory embodied in verdict-directing instruction No. 1 was proper. In other words, the gist of plaintiff's contention is that the facts and circumstances in evidence imposed a common-law duty upon the defendants to erect a banister or handrailing across the rear of the yard and above the retaining wall to prevent any one who stumbled or slipped from falling into the alley, and that the failure to do so was sufficient to present a submissible case of negligence.

 Beyond any dispute, that portion of the back yard set apart by defendants to facilitate the disposal of trash and garbage constituted an area which the tenants had the right to, and did use, in common. Such area, having been reserved by the landlord for the common use of the tenants, was subject to his control. With this right of control an implied obligation was imposed upon the defendants to keep such common part of the property in a reasonably safe condition for such purpose as may reasonably have been anticipated to be a proper use of the property. McGinley v. Alliance Trust Co., 168 Mo. 257, 66 S.W. 153, 56 L.R.A. 334; Herdt v. Koenig, 137 Mo.App. 589, 119 S.W. 56; Roman v. King, 289 Mo. 641, 233 S.W. 161, 25 A.L.R. 1263; Gray v. Pearline, 328 Mo. 1192, 43 S.W.2d 802; Henry v. First Nat. Bank of Kansas City, 232 Mo.App. 1071, 115 S.W.2d 121; Hieken v. Eichhorn, Mo.App., 159 S.W.2d 715. But whether this rule required the defendants under the facts presented to erect and maintain a railing or banister across the rear portion of the area to prevent plaintiff or another tenant from falling to the alley, presents quite another problem, indeed, the very crux of this case is focused upon that precise question.

Plaintiff cites and relies upon this rule appearing in 38 Am.Jur., Negligence, § 90, p. 750: "An affirmative, although not an absolute duty, is imposed upon him, not only of discovering hidden perils, but of preventing injuries to persons to whom he is obligated to use due care, by giving warnings of danger, erecting sufficient guards, and installing equipment calculated to reduce peril." Since the writer was there dealing with the duty of one who maintains or operates dangerous instrumentalities, we fail to see how the statement can furnish authority for the support of plaintiff's contention. Likewise the case of Zuber v. Clarkson Const. Co., 363 Mo. 352, 251 S.W. 2d 52, also cited by plaintiff, was not concerned with the common-law duty of a landlord toward his tenants with respect to the maintenance of common property. It is clearly distinguishable on the facts, and aside from the general principles announced therein with respect to what constitutes negligence, the case throws no light upon the instant situation.

 The common-law duty of the landlord to exercise ordinary care to keep and maintain premises used in common by tenants in a reasonably safe condition does not apply and has not been extended to the lighting of common passageways or stairways. In Lambert v. Jones, 339 Mo. 677, loc. cit. 691, 98 S.W.2d 752, loc. cit. 760, our Supreme Court announced the principle in this language: "The common-law rule is that, 'in the absence of statute or agreement, the landlord is under no legal obligation to light common passageways for the benefit of tenants or their visitors'." This principle was recognized in Barber v. Kellogg, Mo.App., 111 S.W.2d 201; Id., Mo. Sup., 123 S.W.2d 100, 101; Darlington v. Railway Exchange Building, 353 Mo. 569, 183 S.W.2d 101, in fact the rule seems to prevail in many jurisdictions. See 52 C.J.S., Landlord and Tenant, § 417 b, p. 33, and cases cited under Notes 59 and 60; Underhill v. Landlord and Tenant, § 492, p. 810; and Shearman and Redfield on Negligence, Vol. 4, § 787, p. 1809. There

are two logical exceptions to this rule. If the common halls, passageways, or stairways are inherently dangerous, as was the situation in the Darlington case, supra and in May v. Hexter, Mo.App., 226 S.W.2d 383, the landlord is bound to light such area, and if he fails to do so can be held responsible. Or if the landlord undertakes and assumes the duty of lighting, he is bound to perform the duty with reasonable care and prudence or be held liable for his negligence in failing so to do. Barber v. Kellogg, supra; Reinagel v. Walnut Residence Co., 239 Mo.App. 701, 194 S.W.2d 229, 231. On the analogy of the lack of a common-law duty to light common passageways, it has been held that a landlord is not liable for injuries received by a tenant through the failure of the landlord to provide a handrail or banister on a stairway. Watwood v. Fosdick, 212 Cal. 84, 297 P. 881. In Horvath v. Chestnut Street Realty Co., Mo.App., 144 S.W.2d 165, the defendant was charged with negligence in failing to provide, for the use of its tenants, a handrail on one side of stairway. This court ruled that the open and obvious absence of a handrail was not in and of itself enough to make a submissible case of negligence.

In Merrill v. Morris Court, 180 Minn. 565, 231 N.W. 231, there was an entrance walk leading to the front door of the apartment building. Near this walk there were posts and wire designed to protect ornamental shrubs. Plaintiff stumbled against one of the posts while leaving the front entrance and was injured. Answering the contention that defendant was negligent in permitting the posts and wire to be in such proximity to the walk, the Supreme Court of Minnesota said, 231 N.W. loc. cit. 232:

"It was defendant's duty to exercise ordinary care to keep its premises in a reasonably safe condition for its tenants. It was not an insurer of safety. * * * The presence of the posts and wire was not inherently dangerous. There was no concealed trap and no dangerous substance or dangerous machinery or appliance. The entrance walk leading from the door was safe and sufficient. * * * 'The likelihood that an injury would come was very remote. It was hardly to be anticipated.' "

In plaintiff's reply brief counsel frankly concede that to "a certain extent" there is an analogy between the instant case and those involving unlighted common passageways, and insists that the facts proved and submitted were sufficient to warrant application of the "inherently dangerous" theory. The term, "inherently dangerous" has been defined in Street v. W. E. Callahan Const., Mo.App., 147 S.W. 2d 153, loc. cit. 155, as that danger which " 'inheres in the instrumentality or condition itself, at all times, so as to require special precautions to be taken with regard to it to prevent injury; instead of danger arising from mere casual or collateral negligence of others with respect to it under particular circumstances' ". See Emery v. Thompson, 347 Mo. 494, 148 S.W.2d 479; Brown v. City of Craig, 350 Mo. 836, 168 S.W.2d 1080, 1082, and Hull v. Gillioz, 344 Mo. 1227, 130 S.W.2d 623. Aside from the obvious failure of plaintiff to try his case on the theory that danger inhered at all times in and upon the area in question by reason of its use and proximity to the alley, we think it clear that the evidence was wholly insufficient to permit the invoking of that doctrine. Lambert v. Jones and Reinagel v. Walnut Residence Co., supra.

In view of the principles which have been applied to analogous situations, we hold that the defendants were under no common-law duty to erect and maintain a railing above the retaining wall and across the north end of the area from which plaintiff fell. The after-trial motion was properly ruled and the judgment must be and is affirmed.

ANDERSON, P. J., and ELMO B. HUNTER, Special Judge, concur.