Charles SHERMAN, Plaintiff-Respondent,

v.

Samuel BOBRECKER, Defendant-Appellant.

No. 46921.

Supreme Court of Missouri,
Division No. 1.
April 13, 1959.

Al. Lebrecht, Albert Thomson, Kansas City, for appellant. Davis, Thomson, Vandyke & Fairchild, Kansas City, of counsel.

John P. Zimmerman, Kansas City, Rufus Burrus, Independence, for respondent.

VAN OSDOL, Commissioner.

Plaintiff Charles Sherman had verdict and judgment for $10,000 for personal injuries sustained when he, a tenant, having stepped through the doorway at the front entrance of defendant Samuel Bobrecker's three-story, six-apartment building, fronting westwardly on Charlotte Street in Kansas City, stumbled over a child's tricycle, fell and was injured.

Plaintiff's case was submitted to the jury on the theory of negligence of defendant in failing in his assumed duty to illuminate the entrance and the small front lower foyer or lobby and upper halls of the building, which entrance, lobby and halls were used in common by plaintiff and other tenants, occupants of the building. It was submitted that by reason of the dark, unlighted condition the entrance and lobby or hall was not reasonably safe, and that the condition directly caused plaintiff to fall over the child's tricycle which had been left on the lobby floor.

Defendant-appellant contends plaintiff's own testimony shows that, as a matter of law, he was contributorily negligent in proceeding through the entranceway and into the dark lobby without watching where he was going; and that, consequently, the trial court erred in submitting plaintiff's case to the jury. Complaint is also made of the trial court's admission into evidence of two ordinances, parts of the Building Code of the City of Kansas City. These ordinances, defendant says, were immaterial, irrelevant to the issues, and the admission of them into evidence was prejudicial to defendant.

Defendant's apartment building is entered at the center of its west front. There are three tiers of apartments on either (north and south) side of the building. The first-floor lobby or hall is somewhat irregular in shape, but the area of its floor is approximately eight feet square and, as one enters the door at the front entrance, one may ordinarily see five marble steps at the east end of the lobby which lead up to the landing at the first-floor level. To one's left, as one passes eastwardly through and from the front door, there is a panel with bells and speaking tubes set in the north lobby wall, the lower edge of which panel is approximately one foot above a marble

wainscot an inch and a half thick and extending up approximately thirty-eight inches from the lobby floor.

The entrance, and lobbies or halls of each floor are illuminated by one lighting system which is controlled (that is, turned on and off) by a switch located in the basement. The lights at the entrance and in the halls are customarily turned on in the evening by defendant's part-time manager, Mrs. Samuel Rosenberg, or by the janitor who has part-time duties in servicing the building.

Samuel Rosenberg is defendant's stepson. Mr. and Mrs. Rosenberg and family occupy the "first floor, south" apartment in defendant's building. Plaintiff and wife since 1939 had occupied the second floor, south.

There was evidence tending to show that at approximately nine-fifteen on a June evening plaintiff and wife returned from shopping and approached the entrance door of defendant's building. The outside light over the entrance door was not turned on and there were no lights in the halls. Plaintiff looked through the open outer door of the Rosenberg apartment, which door opens directly out on the porch or gallery at the front of the building, and called to them to turn on the lights, but they did not hear—their television was on "very loud." Plaintiff then opened the screen of the front entrance and stepped into the lower lobby or hall intending to ring the Rosenbergs' bell which was the third from the left in the panel in the north wall, and approximately five feet from the entrance door. The hall was dark.

Although a system for lighting seems to have been installed with fixtures at the outside above the entrance door and in the hall of each of the three floors of the building, no switch is available to tenants. The switch provided for turning the entrance and hall lights on and off, as stated, is in the basement. Ordinarily the basement is locked. Keys are in the possession of Mrs. Rosenberg and the janitor.

As plaintiff walked into the dark hall he was trying, with his hand out in front of him, to feel for the panel and the Rosenbergs' bell, the while also groping for the upper edge of the marble wainscot for support. He was intending to ask the Rosenbergs to turn on the hall lights. As he was thus moving northeastwardly toward the panel in the north wall of the lobby he stumbled over the tractor-tricycle which had been left on the hall floor, apparently by the Rosenbergs' young son Michael. Plaintiff theretofore had never seen the tricycle, or other obstruction on the lobby floor. Plaintiff fell and struck his hip and back on the marble steps east of the lobby floor, and was seriously injured. He had not looked down at the floor but, had he looked, he could not have seen the floor or the tricycle thereon—"You couldn't see your hands or feet."

In support of his contention that plaintiff should be adjudged guilty of contributory negligence defendant-appellant has cited Shuck v. Security Realty Co., Mo. App., 201 S.W. 559; Senseney v. Landay Real Estate Co., 345 Mo. 128, 131 S.W.2d 595; and O'Dell v. Dean, 356 Mo. 861, 204 S.W.2d 248. In the Shuck case a subcontractor's employee, plaintiff, had built a concrete stairway around a stairway well-hole with no handrail and a few days later, returning to make repairs in a sidewalk in front of the same building, attempted to go down the stairway which he himself had built. It was "pitch-dark in there." [201 S.W. 560.] He did not attempt to follow the staircase wall with his hand but seems to have reached for a handrail, which he had no reason to think was there, to protect himself from falling into the stairway well which he must have known was there. In the Senseney case plaintiff approached a closed elevator-shaft door—it wasn't very bright in there—and, having opened the door, stepped into the elevator shaft without taking the precaution to determine that the elevator cab was at that floor. In the O'Dell case, wherein it was said a passenger cannot walk "blindly" through an ele-

**901**

vator door, plaintiff knew the location of the elevator and approached and passed through the partially closed elevator door without taking any precaution, in the exercise of ordinary care for his own safety, to determine if the elevator was at the level of the floor.

In our case, plaintiff had lived in defendant's apartment building for several years and was familiar with the construction of the entrance and floor and walls of the lower entrance lobby or hall. He knew there was no hazard of injury because of the physical facilities in the lobby or hall, such as a stairway well or an elevator shaft. He did not know the child's tricycle was on the lobby floor; during his tenure there, he had not seen a child's toy or other obstruction on the lobby floor. Obviously, the hazard of danger due to the presence of the child's tricycle, the presence of which plaintiff had no reason to anticipate, was unlike the hazards of the open stairway well and the elevator shafts of which plaintiffs Shuck, Senseney and O'Dell should have, in the exercise of ordinary care, anticipated or foreseen. Of course, as defendant herein urges, plaintiff could have struck a match before passing through the door into the dark hall and looked down on and examined the floor; but, as we have intimated, in this case we think it reasonably could be said there was nothing known to plaintiff or which plaintiff should have anticipated making it, as a matter of law, necessary to take the precaution of striking a light to inspect the floor as the reviewing court said plaintiff Shuck could and should have taken "if nothing else" to guard against the hazard of falling into the stairway well, the presence of the hazard of which plaintiff Shuck knew or should have known. Plaintiff should not be held guilty of causal negligence as a matter of law for failing to see something defendant's negligence made it impossible for him to see had he looked, since he had no reason to anticipate something hazardous likely would be on the lobby floor. As we have said, plaintiff testified that had he looked he

could not have seen the tricycle on the lobby floor.

In Monsour v. Excelsior Tobacco Co., Mo.App., 115 S.W.2d 219, plaintiff moved down a dark stairway, stepped on a spool, fell and was injured. Plaintiff was familiar with the stairway, and had no reason to suppose there would be a spool or other obstruction on the stairs; but he was not using the handrail as he was attempting to descend. Said the reviewing St. Louis Court of Appeals, 115 S.W.2d at page 223,

"If plaintiff's version of the facts is true, he could not have seen the spool or other foreign object on the step, and he is therefore not to be charged with negligence for having failed to discover something which defendant's negligence had made it impossible for him to see. It is true that he might have used the handrail in descending the stairway, but merely because he did not do so does not convict him of contributory negligence as a matter of law. He had no reason to anticipate the presence of the spool upon the stairway, nor can we say beyond all room for doubt that even if he had used the handrail his feet would not have slipped out from under him just the same when he stepped unexpectedly upon the rolling object."

We have the opinion the question of contributory negligence in this case was properly submitted to the jury.

The second contention here is whether the judgment for plaintiff should be reversed and the cause remanded for a new trial on the ground that two ordinances introduced into evidence by plaintiff were immaterial, irrelevant and prejudicial. The ordinances involved were parts of the Building Code of the City of Kansas City. They were regulations applicable to multiple dwellings. One pertained to "lighting" and was as follows,

"Every stairway or other means of exit shall be provided with an adequate system of lighting, either natural or artificial. Lights in exit signs shall be kept burning at all times when the building is being used or occupied."

The other pertained to "passageways and corridors" and was as follows,

"Safe and continuous passageways, aisles or corridors leading to exits and so arranged as to provide convenient access to exits for every occupant shall be maintained at all times on all floors and in all buildings. Doors swinging into such passageways shall not restrict the effective width at any point of their swing."

In stating his claim plaintiff had pleaded these two ordinances and had alleged negligence, inter alia, of defendant in violating their provisions; but, as we have stated supra, plaintiff submitted his case to the jury on the theory of negligence of defendant in failing to perform his assumed duty of illuminating the entrance and halls of the building.

■ It is the well-settled law that where premises are let to several tenants, as in this case, and where such tenants use certain portions thereof in common, such as halls, stairways, entranceways, and the like, such portions of the premises are held to have been reserved by the landlord for the common use of the tenants and he is in control thereof and is liable for their maintenance, care, and reasonable safety. Darlington v. Railway Exchange Bldg., 353 Mo. 569, 183 S.W.2d 101; Schneider v. Dubinsky Realty Co., 344 Mo. 654, 127 S.W.2d 691. However, in the absence of statute or ordinance, the landlord has no (common law) duty to light these facilities for the benefit of tenants; but, if a landlord assumes the duty of lighting, he is bound to perform the duty with reasonable care and prudence and is liable for his negligence in failing so to do. Barber v. Kellogg, Mo. Sup., 123 S.W.2d 100; Reinagel v. Walnuts Residence Co., 239 Mo.App. 701, 194 S.W.2d 229.

■ In the instant case defendant landlord had undertaken to illuminate the entranceway and halls of his building which were used in common by his tenants, plaintiff and others; and plaintiff did not rely on the pleaded ordinances, quoted supra, in the submission of his case to the jury. His averment and charge of negligence in violation of ordinance was, in effect, abandoned. Now, although plaintiff did not submit his case against defendant on the theory of negligence in violation of the pleaded ordinances, the ordinances, we believe, could not be soundly said to have been wholly incompetent and entirely irrelevant to the issues of negligence as submitted. The provisions of the ordinances were not entirely unlike in their intendment (in providing for the installation of an adequate system of lighting and maintenance of safe passageways and lighting facilities) the theory submitted at plaintiff's behest of the undertaking or assumption of such duties by defendant in this case. The ordinances pertained to lights and the safety of passageways, entranceways and corridors leading to exits and signified the municipality's view of such conditions in multiple dwellings which are or are not reasonably safe. We are mindful of cases in which, although violations of ordinances are not relied upon and submitted as negligence *per se,* they may be admissible and may be considered by a jury as tending to prove negligence, that is, as evidence of negligence. See Floyd v. St. Louis Public Service Co., Mo.Sup., 280 S.W.2d 74, and cases therein cited; State ex rel. Wells v. Mayfield, 365 Mo. 238, 281 S.W.2d 9.

We are also mindful that the admission into evidence of facts entirely immaterial to the issues and without probative force cannot constitute prejudicial or reversible error, when the facts evidenced are of such character that they do not have a natural tendency to inflame or arouse hostile passions, or their prejudicial effect is otherwise made to appear. "Immaterial" or "irrelevant" evidence is excluded, not because it, being merely immaterial and irrelevant, is unjustly inflammatory or prejudicial, but because its admission has a tendency to draw the jury's attention away from the

issues it has been called upon to resolve. Hungate v. Hudson, 353 Mo. 944, 185 S.W. 2d 646, 157 A.L.R. 598; Luechtefeld v. Marglous, Mo.App., 151 S.W.2d 710. In the Hungate case, cited by defendant, the immaterial evidence which was considered prejudicial and its admission an abuse of discretion was the answer (or answers) of plaintiff, required on cross-examination, relating to the fact and reason plaintiff did not sue defendant in Illinois rather than in Missouri. However, in our case, even assuming the ordinances may not have been properly admitted into evidence, the jury was instructed on the issue of negligence as submitted in failing to illuminate the entrance and lobby which duty defendant had undertaken or assumed and the jury's deliberations thus channeled to the issues of negligence submitted. Defendant argues that the fact "that the jury did find an improper degree of lighting and a resulting unsafe way would be consistent with a finding by the jury that defendant had breached" the ordinances. We think this argument does not demonstrate that the introduction of the ordinances broadened the issues submitted, or that their admission into evidence was otherwise prejudicially erroneous. Rather do we think this argument supports the view that the ordinances were not entirely irrelevant in tending to show negligence of defendant as submitted. However that may be, we believe there was no error or abuse of discretion in this connection which materially affected the merits of the case, and we rule the instant contention adversely to defendant. Section 512.160, RSMo 1949, V.A.M.S.

The judgment should be affirmed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.