Ovella H. HULSEY, Plaintiff/Appellant,

v.

Carol A. SCHULZE, and Nancy Hastings, Defendants/Respondents.

No. 49738.

Missouri Court of Appeals,
Eastern District,
Division Seven.

July 29, 1986.

---

Anthony S. Bruning, St. Louis, for plaintiff/appellant.

Robert C. Ely, St. Louis, for defendants/respondents.

Before KAROHL, P.J., CRANDALL, J., and LOWENSTEIN, Special Judge.

HAROLD L. LOWENSTEIN, Special Judge.

Plaintiff Ovella Hulsey appeals from a judgment entered on a jury verdict in favor of her next door neighbors, defendants Carol Schulze and Nancy Hastings. In the underlying suit Hulsey pleaded Schulze and Hastings were negligent in restoring electricity to the garage of their home after they had a fire there. As a result of this negligence, Hulsey claims a second fire occurred, originating in defendants' garage and spreading to Hulsey's home, which was damaged by the fire.

The questions on appeal relate to the injection of insurance coverage into the case, the identification of an expert witness who did not testify at trial, and the denial of a motion for a new trial on the ground the verdict was against the weight of the evidence.

In the early morning of April 18, 1978, a fire broke out in the garage of the Schulze-Hastings home. The garage was adjacent to the Hulsey home. The fire department extinguished the fire before it spread beyond the confines of the garage. Afterwards, the deputy fire chief of the Mehlville Fire Protection District told Hastings the department turned off the electrical power to the garage due to the severity of the burn. He advised Hastings to have a licensed electrician check the electrical wiring for safety before turning the power back on.

Schulze and Hastings remained in their home with the approval of the fire department. However, they soon discovered problems with the electrical system. Schulze called her brother Roy and told him the lights in the kitchen were not working. During the afternoon of April 18, Roy, who was not a licensed electrician, checked the wiring in the home. When he arrived, the circuit breaker to the kitchen was turned off.

Roy testified he disconnected two wires in the junction box over the door leading from the garage to the foyer because he suspected the fire may have caused a short in the wiring. In other words, he disconnected those wires leading to the garage from those leading to the house and capped those leading to the house with wire nuts. He then turned the circuit breaker back on and found electricity had been restored to

the kitchen. Roy further testified the circuit breaker he turned on was the same one that provided power to the garage before he disconnected those wires. He stated he never inspected the wiring inside the garage.

The following day, April 19, Arther Muegge, a licensed electrician, responded to a service call at the defendants' home. Schulze had originally notified the construction company about the electrical problem in the garage before she called her brother Roy. When Muegge arrived Schulze informed him the problem was corrected and told him about the wires her brother had disconnected. Muegge testified he detected no problem with the circuit panel in the basement, but he did not inspect the wiring in the garage.

A second fire occurred in the early morning of April 20. Again the fire originated in the garage of the Schulze-Hastings home, but this time it spread to the Hulsey home, which was severely damaged. Ovella Hulsey received a payment in excess of $65,000 from her insurance company to cover the cost of reconstruction and the loss of her personal property. Additional facts will be supplied when necessary.

Hulsey's first three points on appeal are related to the injection of insurance coverage into the case. At trial, Hulsey offered into evidence an itemized list of personal property she lost in the fire. On direct examination she testified that she prepared the list. This list contained a section showing the depreciated value of the property lost or damaged. On cross-examination defense counsel asked Hulsey who had figured the depreciation on the items. The following proceedings then were had at the bench at the request of Hulsey's attorney, Mr. Bruning:

MR. BRUNING: At this point, Judge, I'd like to make a record that the witness did prepare the list. Those are all of her opinions and beliefs. However, the list was initially prepared with the assistance of an insurance adjustor. And I think there's a possibility that may come out into evidence in the case; and that would be prejudicial to the plaintiff's case and certainly irrelevant that someone assisted her. If she's already testified that she prepared the list and it's her opinion, and whether or not she was assisted by an insurance adjustor, I think, is highly prejudicial.

THE COURT: Counsel may inquire as to her opinion, of course. And you know what the limits are, you know where you're going. At this point the objection is overruled.

MR. ELY: I know if it were figured out by someone other than her, then I think the jury is entitled to know it.

THE COURT: You have a right to inquire. You know what the limits are.

MR. BRUNING: I think if it's figured out by someone other than her, but not the name and position.

THE COURT: It's up to Mr. Ely.

(The proceedings returned to open court.)

Q (By Mr. Bruning) The question was: Who figured out the depreciation on those items?

A. The insurance company.

Hulsey now contends she was forced to testify that her insurance company calculated the depreciation on the items. She claims the statements on the list were her opinions and it was irrelevant and prejudicial for defense counsel to ascertain who assisted her in arriving at her opinions of value. Moreover, she claims the trial court erred in refusing to grant her motion for a mistrial as a result of this reference to insurance.

■ The improper injection of insurance coverage into the case constitutes reversible error especially if done so purposefully or in bad faith. *Gray v. Williams*, 289 S.W.2d 463, 467 (Mo.App.1956). However, not every reference to insurance constitutes reversible error. *Means v. Sears, Roebuck & Co.*, 550 S.W.2d 780, 787 (Mo. banc 1977). The court in *Means* stated "[t]he trial court is in the most advantageous position to determine whether the issue injected into the case was done in

good or bad faith. The action of the trial court will not be lightly disturbed. Where the answer to a question is voluntary and unresponsive, there is no automatic error in refusing to discharge the jury." *Id.* at 788.

There is no reason to disturb the ruling of the trial court. There is no showing that the question was proposed by defense counsel in bad faith. In fact, the transcript shows Mr. Bruning, Hulsey's attorney, repeated the question to her before she answered. Furthermore, Mr. Bruning did not request leave of the court to caution Hulsey not to mention insurance. The fact of insurance was placed before the jury by Hulsey's own voluntary unresponsive answer. *See Missey v. Kwan*, 595 S.W.2d 460, 465 (Mo.App.1980). Finally, the question was legitimate and proper in that it was proposed to ascertain if someone other than Hulsey prepared the depreciated values.

In connection with the insurance issue, Hulsey also complains the trial court erred in refusing to grant her motion for a mistrial based on defense counsel's comment in closing argument in which he referred to Hulsey as a "pawn" of her insurance company. Fatal to this contention is the fact there was no timely objection. Objection was made only after the jury had retired. When a party fails to object to an allegedly erroneous argument at the time it is made, his claim of error is foreclosed from consideration. *Peters v. Henshaw*, 640 S.W.2d 197, 201 (Mo.App.1982). The objection here was therefore waived. *See Blevins v. Cushman Motors*, 551 S.W.2d 602, 616 (Mo. banc 1977).

Hulsey's next point alleges the trial court erred in sustaining an objection to her reading of the defendants' answer to the following interrogatory:

3. State the name and addresses of all persons whom defendants expect to call as an expert witness at trial of the case and for each such persons state the general nature of the subject matter about which the witness is expected to testify.

Answer: William O. Muller, Zurheide-Herrmann, Inc., 4333 W. Clayton Ave., St. Louis, Mo. 63110—re: origin of the fires.

At trial, Schulze and Hastings did not call any expert to testify as to the origins of the fire. The court sustained their objection to the plaintiff reading the answer to the jury on the ground it was irrelevant. Hulsey contends the jury is entitled to know the defendants did not call an expert they had expected to call originally. She also contends "this element is relevant when the defendants dispute the cause of the fires."

Hulsey cites no case authority to support her position. In fact there appears to be little or no case law which addresses the issue she raises. Rule 56.01(b)(4)(a) requires a party to identify each person it *expects* to call as an expert witness at trial. In *Manahan v. Watson*, 655 S.W.2d 807 (Mo.App.1983), the court reversed and remanded the case because the trial court allowed a party to call an expert witness it had failed to identify in an answer to an interrogatory propounded by the opponent. *Id.* at 808–09. *Manahan* instructs that in the event an interrogatory has been propounded under the Rules, a party may not call an expert witness unless his identity has been disclosed in the answer.

In the instant case, the naming of an expert the defendants expected to call as a witness was not a guarantee the expert would testify. Schulze and Hastings were not and are not required by law to produce at trial a witness named in their answer. Furthermore, the record reflects no evidence that the person named was qualified to testify as an expert. *See Shelby County R–IV School District v. Herman*, 392 S.W.2d 609, 616 (Mo.1965). In fact, defense counsel explained to the court out of the hearing of the jury that the person named never inspected the premises after the fire. The trial court did not abuse its discretion in sustaining the objection.

In her final point, Hulsey claims the trial court erred in denying her motion for a new trial because the verdict was against

the weight of the evidence. Appellate courts do not weigh the evidence. *Cole v. Plummer*, 661 S.W.2d 828, 831 (Mo.App. 1983). A determination of the weight of the evidence is left to the discretion of the trial court and will not be disturbed absent a showing of an abuse of that discretion. *Taylor v. F.W. Woolworth Co.*, 641 S.W.2d 108, 111 (Mo. banc 1982). From the record it cannot be said the jury's verdict should be disturbed. This court finds no abuse of discretion.

The judgment of the trial court is affirmed.

All concur.