Michael WILSON, Respondent,

v.

William KAUFMANN, Appellant.

No. 60363.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 22, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Jan. 28, 1993.

Application to Transfer Denied
March 23, 1993.

Paul E. Kovacs, Gary P. Paul, Lucy T. Herbers, Clayton, for appellant.

Gary A. Growe, Clayton, for respondent.

STEPHAN, Judge.

William Kaufmann ("Kaufmann") appeals from the judgment of the trial court entered pursuant to a jury verdict of $150,-000.00 in damages to plaintiff-respondent Michael Wilson ("Wilson"). The jury assessed 35% fault against Wilson and 65% fault against Kaufmann. Wilson was injured when the motorcycle he was driving hit an earthen mound erected by Kaufmann off Shangri–La Estates Drive in a subdivision containing a trailer court and apartment complex in Jefferson County, Missouri. We affirm.

On October 8, 1986, Wilson, who was then eighteen years old and a student at Meramec Community College, had a basketball scrimmage after school. After the game, Chris Roth, a college friend, asked to borrow Wilson's car in exchange for the use of Chris's motorcycle. Wilson agreed. Later that evening, Wilson rode the motorcycle to another friend's apartment in the Shangri–La Estates Apartments in Jeffer-

son County for a party. Shortly after arriving around 9:30 or 10:00 p.m., Wilson decided to spend the night at his friend's place. His friend had no telephone in the apartment, so Wilson left the party to call his mother to let her know his plans.

Sometime after leaving the party, Wilson had an accident while driving the motorcycle. No one witnessed it. Around 1:15 a.m., police officer Robert Scott received a telephone call reporting that an accident had occurred. Within ten minutes, he arrived and found Wilson lying unconscious atop an earthen mound located just beyond the point where Shangri–La Estates Drive came to a dead end. Wilson was taken by helicopter to a hospital.

Wilson remembered very little concerning the accident. He recalled only leaving the party, putting on his helmet and backing the motorcycle out. He had a vague memory about hitting something. After that, his first recollection was awakening at the hospital.

Officer Scott could not determine how long Wilson had been lying on the mound before Scott arrived. Although Officer Scott could not recall the motorcycle's location or condition, he testified that a page of his police report was missing and that it had contained some information about the motorcycle. He did not remember whether he had observed skid marks. He did not perform any smell test to determine if Wilson had been drinking alcohol. Wilson, however, had acknowledged at trial that he had drunk one beer while at his friend's party. According to Wilson's mother, the weather had been clear with temperatures in the seventies during the day and cooler in the evening.

The location of the accident was near the dead end of Shangri–La Estates Drive in Shangri–La Estates, a subdivision containing a trailer court and apartment complex owned by Kaufmann. Access to the Shangri–La Estates trailer court subdivision was via the T-intersection of Shangri–La Estates Drive with Highway 141 or from the adjoining apartment parking area. Shangri–La Estates Drive ("Drive"), a concrete road, runs through the trailer court and, about one hundred feet past the nearest intersection comes to a dead end at the edge of Kaufmann's private property. The Drive is about fifty feet wide at the dead end.

In 1970 Kaufmann had erected an earthen mound consisting of earth, rock, tree parts and debris on his property off the Drive facing its dead end. He had constructed the mound to block access of all-terrain vehicles and persons attempting to enter onto his private field extending beyond the end of the Drive. It was upon the top of this mound that Wilson was found the night of his motorcycle accident.

No lights, barricades, dead-end signs or warning reflector signs of any kind marked the end of the Drive the night of Wilson's accident. The closest light to the end of the Drive was a street light on the Drive, about one block away. Kaufmann had erected steel dead-end signs and other warning signs in the past, prior to the accident, but these had been vandalized or stolen and were not in place the night of the accident. However, by the time of the trial in summer 1990, Kaufmann testified without objection that he had installed black and yellow reflectors on both sides of the earthen mound and dead-end signs near the mound. No street lights had been added. Kaufmann admitted ownership of the Shangri–La Development and of the streets in Shangri–La Estates. Kaufmann, or people under his direction, also performed all the maintenance to the roads, including the Drive.

Kaufmann raises five points on appeal. He challenges the verdict directing instruction, the sufficiency of the evidence, certain comments during closing argument, the admission of certain photographs, and a reference to insurance during voir dire. We address each in turn.

Kaufmann first claims error in the giving of instruction seven, plaintiff's verdict director. Kaufmann had included the instruction in his legal file. The instruction given stated the following:

> In your verdict you must assess a percentage of fault to defendant William

Kaufman [sic] whether or not plaintiff was partly at fault if you believe:

First, defendant maintained an earthen mound at the end of Shangri–La Drive at night without sufficient and adequate lights thereon to warn motorcyclists of its existence and as a result, Shangri–La Drive was not reasonably safe for motorcyclists, and

Second, defendant knew of this condition and knew that such condition was not reasonably safe, and

Third, defendant failed to use ordinary care to remove it or warn of it, and

Fourth, such failure either directly caused or directly contributed to cause damage to plaintiff Michael Wilson.

At the bottom of the court's copy appears the notation "MAI 22.07 Modified," the citation *"Morris v. Israel Brothers*, 510 S.W.2d 437 (Mo.1974)" and "MAI 19.01."

■ *Kaufmann* contends this instruction was flawed in four respects. In his first subpoint, defendant argues the instruction was internally inconsistent because it cited two different and incompatible theories of recovery; one, under MAI 22.07 for maintaining a dangerous condition on one's own, *private* premises and two, under *Morris v. Israel Brothers*, 510 S.W.2d 437, based on MAI 22.04 for maintaining a dangerous condition on a *public* roadway. The gist of defendant's position is that the instruction confuses the nature of the duty owed to plaintiff and whether defendant's obligation arises as simply a private landowner or as a landowner of property abutting public roadways. He states that the confusion is compounded by plaintiff's first amended petition which alleges that Shangri–La Drive was a *public* road.

Plaintiff's first amended petition did allege that Shangri–La Drive is a public street in Jefferson County and that William Kaufmann is the developer and owner of Shangri–La Drive. The petition also alleged that both Jefferson County and Kaufmann had a duty to maintain the street in a reasonably safe condition. At the time the first amended petition was filed plaintiff had named Jefferson County as a defendant, in addition to Kaufmann.

However, Jefferson County filed a motion for summary judgment accompanied by affidavit denying any duty on its part to maintain or repair Shangri–La Drive because Jefferson County did not and never had constructed, owned, maintained or repaired Shangri–La Drive. Plaintiff later voluntarily dismissed Jefferson County leaving Kaufmann as the only defendant. Plaintiff never amended his pleadings.

Plaintiff's petition was inartfully drafted, in light of the evidence and instructions presented to the jury. Nevertheless, defendant's motion for new trial did not raise the ground that plaintiff's evidence failed to conform to the pleadings or that the instruction failed to conform to the pleading.

Furthermore, the evidence at trial clearly reveals no confusion concerning whether the road was public or privately owned. At trial, Kaufmann admitted that he owned the mobile park development and its streets, including Shangri–La Drive, as well as the wooded field beyond Shangri–La Drive. There was no issue of ownership of the Drive, despite evidence that the Drive was used by persons not actually residing within the subdivision. Thus, the evidence supported an instruction based on MAI 22.07, on the liability of a landowner arising from injuries occurring on *his* property, not on public property.

■ Plaintiff modified the first paragraph of MAI 22.07 in accordance with language approved in *Morris v. Israel Brothers*, 510 S.W.2d 437. Defendant has seized upon plaintiff's modification citing *Morris* to inject the private/public road issue because *Morris* involved MAI 22.04, on the liability of another for creation of a dangerous condition on a *public* road. Plaintiff's reliance upon *Morris* was limited. Plaintiff utilized language approved in *Morris* only to encompass the theory that defendant constructed and knowingly maintained an obstruction (the earthen mound) at the end of his Drive and failed to provide adequate lighting at such location. Plaintiff's use of *Morris* to modify MAI 22.07 did not convert his theory from one of premises liability under MAI 22.07 to one

of an abutting landowner's liability for a dangerous condition on public roadways or sidewalks under MAI 22.04. We find no error in the instruction based upon defendant's first subpoint.

Appellant's second subpoint argues alternatively that, if the instruction was a submission under MAI 22.07 for premises liability, the instruction was erroneous because it assumed that the Drive was a private road although evidence established the Drive was a public road; therefore, Kaufmann, as an abutting landowner, had no duty to post signs on or to light the Drive, a public road. He contends the instruction further assumed that plaintiff had permission to be on defendant's property when, in fact, plaintiff was a trespasser to whom defendant Kaufmann owed no duty to make his property safe. We have previously discussed and rejected defendant's claim the Drive was not private. In attacking the instruction in his motion for new trial, defendant made no reference to plaintiff's status as licensee or trespasser. Thus, this contention is not preserved for our review.

Defendant's third prong argues alternatively, if the instruction submitted a theory of maintaining a dangerous condition on a public road, the instruction was erroneous because it assumed, despite evidence to the contrary, that the earthen mound was *on* rather than *off* the Drive and that defendant had notice the warning signs were not in place within a reasonable period of time to replace the signs. This subpoint was preserved in defendant's motion for new trial. However, we have previously determined plaintiff's instruction was not submitted under the theory of maintaining a dangerous condition on a public road under MAI 22.04 but was a submission of premis-

es liability under MAI 22.07. We need not address this subpoint.

■ Defendant's fourth and final salvo attacks the instruction as a submission of the theory of premises liability under MAI 22.07 because it omitted an element required by the pattern instruction. That element was whether defendant knew or in the exercise of reasonable care should have known that plaintiff did not and by using ordinary care could not have discovered that Shangri–La Drive was not reasonably safe.

The record does not reflect whether plaintiff's verdict director was patterned upon MAI–22.07 [1978 Revision] or MAI 22.07 [1991 Revision]. Kaufmann cites to MAI 22.07 [1978 Revision]. Wilson cites to MAI 22.07 [1991 Revision] which became effective January 1, 1991, before the case was tried in March 1991.[1]

We assume plaintiff's instruction was, in fact, based upon MAI 22.07 [1991 Revision] since the verdict director omitted the element of plaintiff's discovery of the unsafe condition. However, as defendant observes, plaintiff also omitted the third element in the pattern instruction that "defendant knew or had information from which defendant, in the exercise of ordinary care, should have known that persons such as plaintiff would not discover such condition or realize the risk of harm, ..."[2] Nothing in the Notes on Use or the Committee's Comment requires or even suggests that paragraph three of MAI 22.07 [1991 Revision] be deleted when comparative fault under MAI 37.01 is submitted to the jury.

The confusion over whether paragraph three was properly excluded may be the result of the recent decision *Gillis v. Collins,* 770 S.W.2d 503 (Mo.App.1989). The instruction given by plaintiff in the case at

---

1. The substantive difference between the two pattern instructions is the deletion from the 1991 Revision of the third element in the 1978 Revision that "plaintiff did not know and by using ordinary care could not have discovered that such condition was not reasonably safe." This change was made in response to the prior holding of our Missouri Supreme Court in *Cox v. J.C. Penney Co.,* 741 S.W.2d 28, 30 (Mo. banc 1987) that such a finding in an instruction is inimical to the concept of comparative fault

adopted in *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983).

2. The wording of the third paragraph of MAI 22.07 [1991 Revision] is quite similar but not identical to that contained in the fourth element of its predecessor, MAI 22.07 [1978 Revision]; however, the substance of the two elements remains the same.

bar is nearly identical to the instruction given in *Gillis* which the Western District upheld as proper. The instruction in *Gillis* read as follows:

> In your verdict you must assess a percentage of fault to defendant if you believe:
>
> First, there was water on the floor of defendant's porch and as a result the porch was not reasonably safe, and
> Second, defendant knew of this condition and knew that such condition was not reasonably safe, and
> Third, defendant failed to use ordinary care to warn of it, and
> Fourth, as a direct result of such failure, plaintiff was injured.

*Gillis*, 770 S.W.2d at 505. Immediately after setting out the instruction, the Western District made the following observation:

> The instruction was based on MAI 22.-07, the verdict directing instruction required to be given in cases in which a licensee sues an owner or occupier of land, for an injury sustained as a result of a condition of the premises, modified in accordance with *Cox v. J.C. Penney Co.*, 741 S.W.2d 28 (Mo. banc 1987).

*Gillis*, 770 S.W.2d at 505. At that time, MAI 22.07 [1978 Revision], also included the paragraph requiring the jury find that plaintiff did not know and by using ordinary care could not have discovered the condition was not reasonably safe. The instruction given, however, omitted this paragraph. 770 S.W.2d at 505. Based on the reasoning in *Cox v. J.C. Penney*, 741 S.W.2d 28, the Western District determined the omission of the paragraph was proper because the paragraph was a remnant of contributory negligence and no longer appropriate. *Gillis*, 770 S.W.2d at 505 n. 1. The current MAI 22.07 [1991 Revision] reflects the holdings of *Cox* and *Gillis* by deleting this paragraph from MAI 22.07.

However, the instruction in *Gillis* not only omitted this paragraph, but also omitted the element from the pattern instruction whether the defendant knew or in the exercise of ordinary care should have known that plaintiff could not discover such condition was not reasonably safe required by MAI 22.07 [1978 Revision].[3] The Western District in *Gillis* made no observation concerning the omission of this paragraph from the verdict directing instruction given. Thus, while the Western District expressly determined the omission of the paragraph concerning plaintiff's duty of discovery of an unsafe condition, it remained silent about the omission of the paragraph concerning defendant's superior knowledge of the unsafe condition. The Western District's silence concerning the omission of this paragraph may be construed as tacit approval of the instruction since the Western District ultimately upheld the instruction given as proper. 770 S.W.2d at 507.

We cannot account for the Western District's approval of the instruction in *Gillis* despite the instruction's failure to submit defendant's knowledge that plaintiff could not have discovered the dangerous condition on defendant's premises as an element.

In the case at bar, the omission of this element required by the pattern MAI 22.07 [1991 Revision] instruction was error. Although an erroneous instruction was given, we must consider whether the issue is properly preserved on appeal. Rule 70.03 requires specific objections to instructions be made in motions for new trial unless they were previously made at trial. *State ex rel. Missouri Highway and Transportation Commission v. Jim Lynch Toyota, Inc.*, 830 S.W.2d 481, 488 (Mo.App.1992). The same is required by Rule 78.07. The requirements of these rules are designed to afford the trial court an opportunity to correct its errors without the delay and expense of an appeal; they are to be strictly enforced. *Jim Lynch Toyota*, 830 S.W.2d at 488. If on appeal an alleged error relating to an instruction differs from or is not included in the specific objections made to and determined by the trial court,

3. *See* fn. 2.

it may not be reviewed by the appellate court. *Id.*

■ Although defendant did raise an objection to the verdict director both at trial and in his motion for new trial, his objection, even when construed most broadly, fails to mention the omission of this element from the verdict director as error. Although a defendant is under no duty to submit a correct verdict director for plaintiff, a defendant is required to define the error in the verdict director submitted by a proper specific objection. *Kalish v. Smith,* 824 S.W.2d 35, 37 (Mo.App.1991). Defendant's claim of error failed to mention this ground, despite other grounds raised in his motion for new trial; therefore, he failed to preserve for appeal this error in the submission of plaintiff's verdict director. *Id.* Defendant's first point is denied in all respects.

■ In Kaufmann's second point, he asserts the trial court erred in denying his motions for directed verdict and judgment notwithstanding the verdict and, alternatively, for new trial based on his position there was no substantial evidence to support plaintiff's verdict director and plaintiff failed to make a submissible case. The thrust of Kaufmann's attack on submissibility targets the element of causation. He maintains there was no substantial evidence establishing that defendant's negligence proximately caused plaintiff's injuries. Defendant Kaufmann insists that a verdict in plaintiff's favor rests on surmise, speculation and conjecture.

■ No direct evidence establishes that defendant's failure to light the earthen mound directly caused plaintiff's accident. There were no eyewitnesses to the single motor vehicle accident. After having sustained serious trauma to the head, plaintiff had little recollection of the events immediately preceding his accident. However, direct testimony is not indispensable. To make a submissible case, plaintiff may establish causation by circumstantial evidence, which includes favorable inferences drawn from all the evidence. *Stacy v. Truman Medical Center,* 836 S.W.2d 911, 922 (Mo. banc 1992). The question thus becomes whether, in this case, the circumstances shown by the evidence are such that a reasonable probability that the defendant was negligent may be inferred from it. *Mills v. Crawford,* 822 S.W.2d 548, 552 (Mo.App.1992).

■ Plaintiff's evidence in a negligence action need not exclude all those causes for which defendant would not be liable in order to recover. *Swanson v. Godwin,* 327 S.W.2d 903, 910 (Mo.1959). It is sufficient if there is substantial evidence from which the jury may find that negligence was the proximate cause. *Id.* Anything beyond that is a matter of defense. *Id.* And causal connection may be, and often is, proved by showing facts and circumstances which "fairly suggest" negligence as the proximate cause, in the light of ordinary experience. *Id. (quoting Anderson v. Asphalt Distributing,* 55 S.W.2d 688, 693 (Mo.1932)). Causation is dependent upon the facts of each case. *Georgescu v. K–Mart Corp.,* 813 S.W.2d 298, 301 (Mo. banc 1991).

Plaintiff here could not say precisely what he hit; nevertheless, that inability did not destroy the force of his testimony that he did, in fact, remember "hitting something" on Shangri–La Drive. The only evidence of any obstruction was the earthen mound of dirt, debris and tree limbs barricading ingress and egress from defendant's field abutting the Drive. The officer at the accident scene testified that it was on this mound that he found plaintiff's body, his helmet still on his head. Although the second page of the officer's report was missing so that his independent recollection of the accident scene was limited, he recalled plaintiff's body was toward the street side of the earthen mound. More importantly, neither plaintiff nor defendant presented evidence of any other obstruction on the Drive.

Plaintiff could not testify that he specifically recalled turning on the headlamp of the motorcycle; however, he testified concerning his usual course of conduct in operating the lights on a motorcycle at night. He was also wearing his helmet. The jury could reasonably infer, if plaintiff had sufficient presence of mind to put on his helmet, that he also had turned on the motor-

cycle's headlight. Nightime photographs of the Drive and earthen mound taken from the vantage point of a motorcycle, with its lights on, illustrated for the jury the earthen mound's degree of visibility from the Drive at night.

Kaufmann argues that this evidence presents a situation from which liability or non-liability may be equally inferred. Missouri law is clear that, if evidence presents a situation from which liability or non-liability may be equally inferred, no submissible case has been made. *Bass v. Bi–State Development Agency,* 661 S.W.2d 609, 612 (Mo.App.1983). However, plaintiff should not be denied the right to have his case submitted to the jury unless his own evidence discloses the actual happening of some other occurrence which might as well have caused the injury, in which event a verdict of the jury in his favor would indeed be left to rest upon mere speculation and conjecture. *Accord Woelfle v. Connecticut Mut. Life Ins. Co.,* 234 Mo.App. 135, 112 S.W.2d 865, 875 (1938). Defendant suggests that plaintiff may not have been looking in the direction of the earthen mound, may not have had the motorcycle headlamp on, and may have been speeding. Defendant highlights the absence of any evidence of skid marks or tread marks near the earthen mound or of any damage to the motorcycle. Such concerns are a matter of defense, *see Swanson,* 327 S.W.2d at 910, and defendant argued these concerns to the jury and submitted to the jury plaintiff's comparative fault for failure to keep a careful lookout and driving at a speed which would make it impossible to stop within the range of visibility.

The evidence of this case, albeit highly circumstantial, does not compel the conclusion that defendant's liability or non-liability may be *equally* inferred. As we have previously observed, there was no other evidence from plaintiff suggesting a cause for his accident, other than defendant's failure to light the earthen mound at the dead end. There is substantial evidence from which it may legitimately be inferred that plaintiff's injuries did result from his having accidentally run into the mound at the edge of Shangri–La Drive.

Regardless of defendant's insistence that plaintiff's evidence was too circumstantial to attribute plaintiff's injuries to defendant's failure to warn of the earthen mound, no other evidence was adduced to show any other actual occurrence to which plaintiff's accident might be attributed. If reasonable minds can draw different conclusions from the facts, the questions of negligence and causation are for the jury. *Schaffer v. Bess,* 822 S.W.2d 871, 876 (Mo.App.1991); *Eichelberger v. Barnes Hospital,* 655 S.W.2d 699, 704–05 (Mo.App. 1983). We conclude the evidence supports a reasonable inference by the jury that a causal connection existed between defendant's failure to light the mound and plaintiff's injuries. We are satisfied plaintiff has met the element of causation to make a submissible case of negligence.

Kaufmann's other attacks on whether there was substantial evidence to support the verdict director were discussed in our disposition of his first point. We need not belabor our opinion in finding no merit to Kaufmann's additional challenges to the submissibility of plaintiff's case. Point denied.

Kaufmann's third point is that the trial court should have granted his motion for new trial on the ground that plaintiff's counsel improperly argued during closing argument that Kaufmann was negligent for failing to place reflective signs on the Drive. He contends such argument expanded and went beyond the scope of plaintiff's verdict director. He states that the instruction imposed liability on him only for a failure to light and not, as plaintiff's counsel argued, for a failure to post warning signs.

The trial court is accorded broad discretion in ruling on the propriety of closing argument to the jury and will suffer reversal only for an abuse of discretion. *Moore v. Missouri Pacific R.R.,* 825 S.W.2d 839, 844 (Mo. banc 1992). It is improper for counsel to go beyond the issues and urge prejudicial matters. *Kelly*

*by Kelly v. Jackson,* 798 S.W.2d 699, 704 (Mo. banc 1990). Arguing a matter outside the submitted issues, however, does not constitute a *per se* ground for the granting of a new trial. *Id.* "In ruling on the propriety of final argument, the challenged comment must be interpreted in light of the entire record rather than in isolation." *Id.* (*quoting Titsworth v. Powell,* 776 S.W.2d 416, 422 (Mo.App.1989)).

Examined in the light of the entire record, plaintiff's counsel did not argue a new issue at variance with the verdict director. After Kaufmann's objection, during the remainder of argument by Wilson's counsel, counsel consistently mentioned "reflective type of sign" or "reflective sign". Counsel's subsequent argument was clearly directed to Kaufmann's failure to light and failure to post *reflective* signs. A reflective sign is one method of providing illumination to a dangerous condition. Plaintiff's theory of Kaufmann's negligence for failure to light the earthen mound submitted in plaintiff's verdict director is sufficiently broad that it encompasses an argument directed toward Kaufmann's failure to post *reflective* signs. Point denied.

In his fourth point, Kaufmann asserts that the admission of plaintiff's exhibits twelve through seventeen were irrelevant, immaterial and incompetent evidence. The exhibits were nighttime photographs of the dead-end road taken from a motorcycle with its lights set on low beam at three different distances from the earthen mound. The pictures taken on February 21, 1991, three weeks before trial, were a collaborative effort between plaintiff's witnesses, photographer Sherry Rabushka and an accident reconstruction and automotive engineer, Francis Oldham, both of whom testified at trial.

Kaufmann states the photographs' admission was improper for three reasons. First, he argues there was no foundation that the photographs were a fair and accurate representation of same or similar conditions as at the time of the accident. He states the photographs attempted to depict what plaintiff would have seen the night of his accident with and without warning

signs having been present. He argues any such re-creation scene was improper because there was no evidence to establish the speed at which plaintiff was travelling, the lighting conditions, the use of the motorcycle's headlamp and whether the motorcycle's front light was properly adjusted, clear and on high or low beam. Second, he contends that the photographs assumed even greater importance because Francis Oldham (whose testimony laid the foundation for the photographs' admission) had also identified himself to the jury as an expert in accident reconstruction, despite his not having been disclosed during discovery as an expert witness. Third, Kaufmann states some of the photographs showed that black and yellow reflector signs had been placed on the Drive since the accident and, thus, were improper as evidence of subsequent repairs to the accident area. Kaufmann concludes that plaintiff sought the introduction of these photographs solely to prove Kaufmann's negligence.

▮▮▮ Kaufmann first argues that there was no foundation that the photographs were a fair and accurate representation of same or similar conditions. We disagree. The admission of photographs is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *State ex rel. Missouri Highway and Transp. Comm'n v. Vitt,* 785 S.W.2d 708, 712 (Mo.App.1990).

The witnesses present on February 21, 1991, when the photographs were taken testified at trial that the photographs accurately represented the scene at the Drive that evening. Officer Scott, who had arrived at the accident about three hours after its occurrence, also testified that the photographs fairly and accurately depicted the scene of the accident on October 8, 1986. Defendant himself acknowledged during plaintiff's case-in-chief that there had been no changes in the street since the date of the accident and the date the photographs were made. We discern no error in the foundation laid for the photographs' admission.

Within the same point, defendant argues the photographs assumed greater importance because Francis Oldham had identified himself as an expert in accident reconstruction, despite his not having been disclosed during discovery as an expert witness. When asked about his occupation, Oldham had answered that he did "accident investigation reconstructions", and possessed a background in mechanical engineering. Oldham, however, did not testify as an expert. He merely laid the foundation for the admission of the photographs. His testimony reflected that he had supplied a motorcycle similar to plaintiff's in order to take nighttime photographs of the earthen mound at various distances from the vantage point of a motorcycle. He gave no opinions on speed, stopping distances, or impact. An expert witness is "one who by reason of education or specialized experience possesses superior knowledge respecting a subject about which persons having no particular training are incapable of forming an accurate opinion or of deducing correct conclusions." *St. Louis County v. Pennington,* 827 S.W.2d 265, 266 (Mo.App.1992). His activities, in conjunction with the photographer's, in producing photographs illustrating a nighttime accident scene, did not reflect any knowledge beyond that of a layman. The record shows that Oldham was not called as an expert witness. The rules regarding the identification of expert witnesses do not apply when a witness who participated in an event incidentally brings knowledge and expertise to the stand. *Sharaga v. Auto Owners Mut. Ins. Co.,* 831 S.W.2d 248, 255 (Mo.App.1992). His testimony was not improperly admitted in order to lay the foundation for the photographs.

Kaufmann also states that certain of the photographs should not have been allowed because they reflected subsequent remedial repairs. It is well established that evidence of subsequent remedial measures is inadmissible to show antecedent negligence but may be admissible for other purposes. *Matthews v. City of Farmington,* 828 S.W.2d 693, 697 (Mo.App. 1992). "This rule does not require the exclusion of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment." *Hewitt v. Empiregas, Inc. of Sikeston,* 831 S.W.2d 744, 747 (Mo.App. 1992) (*quoting* Fed.R.Evid. 407). Another such purpose is to show the condition of the accident site at the time of the accident. *Matthews v. City of Farmington,* 828 S.W.2d at 697. Wilson responds that the photographs were admissible to show Kaufmann's control of the Drive and the feasibility of maintaining warning signs and, as such, the photographs fall within *Hewitt's* exceptions to the general rule.

Wilson's response, however, overlooks Kaufmann's testimony admitting that he did, in fact, control the Drive and had posted warning signs in the past. Therefore, neither Kaufmann's control nor the feasibility of precautionary measures was at issue. We believe those photographs of the remedial repairs should not have been admitted. Nevertheless, prior to the admission of those photographs showing subsequent repairs, Kaufmann himself testified that, since the accident, he had posted black and yellow reflectors and warning signs at the dead end. Thus, the photographs of the remedial repairs were merely cumulative of Kaufmann's own testimony. We discern no prejudice by the admission of the photographs nor has Kaufmann demonstrated any prejudice to warrant our finding such error requires reversal.

In his final point, Kaufmann states the trial court erred in denying his motion for a mistrial during voir dire. He argues that questions by plaintiff's counsel to the venire panel whether they or any of their relatives had a financial interest in Farmer's Insurance Company, Kaufmann's liability insurance carrier, unduly emphasized the issue of insurance warranting a mistrial. We disagree.

During the pretrial conference, plaintiff's counsel requested permission to ask jurors about insurance during voir dire. The trial court assented, directed counsel not to unduly highlight the question and further

provided that the trial court would handle any follow-up questions. Upon such proviso, Kaufmann's counsel agreed to this procedure.

During voir dire, plaintiff's counsel asked, "Are any of you folks employed, members of your immediate family employed by or otherwise have a financial interest in the Farmer's Insurance Company?" Five jurors answered affirmatively; however, one of those jurors, before answering, asked counsel to repeat the question which plaintiff's counsel did. No further discussion ensued. Plaintiff's counsel continued his examination on different matters.

A few minutes later, defense counsel asked to approach the bench. He advised the court he had "a real problem" with the insurance question having been repeated. The trial court stated that it was "overruling the motion", although counsel had not made a specific objection or asked for a mistrial.

After about an hour of voir dire had elapsed, a juror suddenly interjected the following: "About the Farmer's Insurance question was if I have a holding in the company; is that what you were asking? I'm a member of that. It's my agent. Is that what you want to know?" Plaintiff's counsel responded, "Right. You told us about that. Thank you." Defense counsel then immediately began his portion of the voir dire examination. At its conclusion, defense counsel stated that he was renewing his motion previously made at the side bar during voir dire.

■■■■ The improper injection of insurance coverage into the case constitutes reversible error especially if done so purposefully or in bad faith. *Hulsey v. Schulze*, 713 S.W.2d 873, 875 (Mo.App.1986). However, not every reference to insurance means reversible error. *Id.* Litigants have a right to determine whether a venire person is connected with an insurance company interested in the litigation. *Carothers v. Montgomery Ward & Co.*, 745 S.W.2d 170, 172 (Mo.App.1987).

■■■■ The basic principle is that whenever the trial judge is called upon to rule on the question of whether a mistrial should be granted because of improper injection of insurance into the case, much must be left to the sound discretion of the trial court and only where a manifest abuse of discretion appears should the appellate court interfere. *Gray v. Williams*, 289 S.W.2d 463, 467 (Mo.App.1956). This principle rests on the proposition that the trial court has an advantageous position to determine whether counsel who has introduced insurance into the case was motivated by good or bad faith in doing so. *Id.* Our supreme court in *Means v. Sears, Roebuck & Co.*, 550 S.W.2d 780 (Mo. banc 1977), echoed the precept enunciated in *Gray* by stating as follows:

> The trial court is in the most advantageous position to determine whether the issue injected into the case was done in good or bad faith. The action of the trial court will not be lightly disturbed. Where the answer to the question is voluntary and unresponsive, there is no automatic error in refusing to discharge the jury.

550 S.W.2d at 788.

Nothing in the record before us indicates bad faith by plaintiff's counsel in asking the question. Counsel fully complied with the court's pre-trial directive that he ask only the single question and leave any follow-up to the trial court. Although counsel did reiterate the question at a juror's request, he merely asked the same question. He did not embellish the question or dwell on the juror's answer. We find that counsel's single question about insurance, despite having been repeated, did not violate the good faith principle espoused in *Means*. The trial court did not abuse its discretion. The point is denied.

The judgment is affirmed in all respects.

PUDLOWSKI, P.J., and CRIST, J., concur.