Luis D. TAYLOR, Respondent,

v.

**REPUBLIC AUTOMOTIVE PARTS, INC., Appellant.**

No. WD 53108.

Missouri Court of Appeals,
Western District.

Aug. 26, 1997.

D. Terrell Dempsey, Hannibal, for Respondent.

John G. Schultz, Kansas City, for Appellant.

Before ELLIS, P.J., and LOWENSTEIN and HOWARD, JJ.

HOWARD, Judge.

This appeal stems from a personal injury action brought by Plaintiff Luis Taylor ("Taylor") against Defendant Republic Auto Parts, Inc. ("Republic"). In his petition, Taylor alleged that in 1991 he sustained back injuries when his vehicle was struck by a pickup truck owned by Republic and driven by one of Republic's employees. A jury trial was held in the Circuit Court of Adair County. At trial, Republic's primary theory of defense was that Taylor's back injuries actually dated back to a 1988 football injury, and that Taylor was using the car accident as an excuse to pay for back surgery that he chose to forego in 1988. Nonetheless, the jury

returned with a verdict in favor of Taylor, and awarded him compensatory damages of $39,593.38.

Republic raises five points on appeal. Four of the points relate to specific instances of allegedly improper conduct by Taylor's attorney during the trial. In the remaining point, Republic claims that the court erred in sustaining a hearsay objection to testimony by a police officer, Sgt. William Fay, regarding statements made to him by Taylor's father. We will address these points in the order they arose during the trial.

### Point I: Improper Injection of Insurance During Voir Dire

■ Republic first contends that Taylor's attorney wrongfully injected insurance into the minds of the jury during voir dire, and that the trial court erred by denying Republic's subsequent request for a mistrial. This is what happened: Taylor's attorney began voir dire by asking if any of the venirepersons knew him. One venireperson, Richard McCandless, responded, "I'm an insurance adjuster for State Farm. I've dealt with you on a number of times." Later, Taylor's attorney asked if anyone had worked a job where they were required to investigate auto accidents. Venireperson McCandless again responded, "I have been an insurance adjuster for thirty-six years, but I haven't done any automobile work for twenty-two. It's all been fire and casualties." Shortly thereafter (Transcript p. 51), Taylor's attorney asked the "insurance question"—whether any member of the jury panel or their immediate family was an officer, director, employee, agent or stockholder of General Accident Insurance Company. Nobody responded. Sometime later in voir dire (Transcript pp. 70, 71) he asked if any of the venirepersons had experience reading x-rays. The following transpired:

VENIREPERSON: Richard McCandless. I have in the course of my work.

Q. You have looked at x-rays?

A. Yes.

Q. Anything about having done that in the course of your work that would give you special knowledge?

A. No.

Q. Do you think you might know more about x-rays than other folks?

A. Maybe some of the other folks, but that wouldn't make any difference.

Q. You could sit and listen fairly and impartially to the evidence and return a fair and impartial verdict?

A. Yes.

Q. Mr. McCandless, by the nature of what you do, do you think you might be more inclined or sympathetic towards the defense in this matter?

Before McCandless could respond to the last question, Republic's attorney objected that the question was an improper reference to insurance, and after some argument at a bench conference asked for a mistrial. The judge ruled, "I'm going to sustain an objection to the inquiry, but I'm going to deny the motion for a new trial. I don't think that under all the circumstances that that's going to emphasize the issue." The judge then instructed Taylor's attorney to make a different inquiry to another venireperson.

Republic assigns error to the last of the above quoted questions—"*Mr. McCandless, by the nature of what you do, do you think you might be more inclined or sympathetic towards the defense in this matter?*" Republic contends that it was an improper follow-up to the already asked "insurance question." It claims that Taylor's attorney asked the question while pointing his finger at the defense table, and that the question was asked "with a clear intent to interject insurance into the minds of the jurors." Republic, therefore, claims that the court's failure to grant a mistrial was reversible error.

■ Citing *Ivy v. Hawk*, 878 S.W.2d 442(Mo.1994), Republic suggests that the trial court had no discretion in deciding whether to grant a mistrial. We find no such authority in *Ivy* or anywhere else. In *Ivy* our Supreme Court addressed the issue of a plaintiff's right to ask the preliminary "insurance question" during voir dire—i.e., an inquiry as to whether any of the potential jurors or their families work for, or have an interest in, an insurance company involved with the lawsuit. The Court reaffirmed the

Missouri rule that a plaintiff is entitled, as a matter of law, to ask the preliminary "insurance question" so long as the proper procedure is followed. The proper procedure includes "1) first getting the judge's approval of the proposed question out of the hearing of the jury panel, 2) asking only one 'insurance question,' and 3) not asking it first or last in a series of questions so as to avoid unduly highlighting the question to the jury panel." *Ivy*, 878 S.W.2d at 445. This procedure has developed as a balance between two competing concerns, both based on the premise that parties to a lawsuit have the right to a fair and impartial jury. On the one hand is the right of the parties to know if any of the potential jurors or their families have an interest in the outcome of the lawsuit. *Id.* at 444. On the other hand is the desire to avoid prejudicing the jury by emphasizing the existence of liability insurance coverage. *Id.* at 446.

*Ivy* thus stands for the proposition that "[a] trial court's denial of the right to ask the preliminary 'insurance question' is prejudicial as a matter of law." *Id.* at 446. However, contrary to Republic's assertion, *Ivy* does not mandate that a trial court grant a mistrial when a plaintiff steps beyond the boundaries of the "insurance question." In fact, the Court in *Ivy* specifically stated that follow-up questions to the preliminary "insurance question" are at the discretion of the trial court. *Id.* at 446 (citing *Morris v. Duker*, 414 S.W.2d 77 (Mo.1967)).

 Having thus found that *Ivy* is inapplicable to this case, we refer to the more general law associated with the injection of insurance into a lawsuit. Aside from the rules regarding the asking of the "insurance question," it generally is improper to inject the issue of liability insurance into an action for damages, and such an injection of insurance can constitute reversible error, particularly if done so in bad faith. *Annen v. Trump*, 913 S.W.2d 16, 23 (Mo.App.W.D. 1995); *Wilson v. Kaufmann*, 847 S.W.2d 840, 851 (Mo.App.E.D.1992). However, not every reference to insurance constitutes reversible error or requires the discharge of a jury. *Id.* The trial judge is in a much better position than the appellate court to determine whether a reference to insurance was motivated by good or bad faith. *Wilson*, 847 S.W.2d at 851. The trial court also is better able to judge the effect on the jury. For these reasons, the decision of whether to grant a mistrial when such a situation arises is one that is left to the sound discretion of the trial court, and only where a manifest abuse of discretion occurs will the appellate court disturb this decision. *Id.*

In this case, after McCandless twice had identified himself as an insurance adjuster, Taylor's attorney asked the question, *"Mr. McCandless, by the nature of what you do, do you think you might be more inclined or sympathetic towards the defense in this matter?"* We find no manifest abuse of discretion by the trial court in refusing to grant a mistrial. Some time had passed (twenty pages of transcript) between the questions, and no specific mention of insurance was made. Although Republic claims that Taylor's attorney pointed to the defense table, it is impossible for us to tell from the record the context or effect of such an action. These are all factors that the trial judge is much better able to evaluate than us.

Under the circumstances we cannot say the trial court's refusal to grant a mistrial constituted prejudicial error. Point I is denied.

**Point II: Failure to Grant a Continuance**

 The next two points stem from issues that originated during Republic's cross-examination of Sgt. William Robert Fay, the police officer who responded to the accident scene. Sometime after the accident, Sgt. Fay had gone to Taylor's home either to get insurance information or to return something. Taylor was not there, but Taylor's father, Tony Salazar, was home and spoke to Sgt. Fay. Republic's attorney sought to have Sgt. Fay testify about the conversation he had with Mr. Salazar. More specifically, Republic wanted Sgt. Fay to testify that Mr. Salazar had told him that Taylor was getting treatment for a previous back injury. Taylor's attorney objected that the testimony would be hearsay, and the court sustained the objection.

After some argument, Republic's attorney suggested that he could call Sgt. Fay as a rebuttal witness and question him about the conversation with Salazar if Salazar was to testify and deny making the statements to Sgt. Fay about Taylor's prior back injury. The judge responded, "Well, that may not be relevant to impeach that statement or this witness, but we can consider it if it comes up...."

When the examination of Sgt. Fay concluded, the judge ordered a brief recess. During the recess, Mr. Salazar, who had been present in the courtroom, left the courthouse. His wife, Anita Salazar, remained, however, and was called as Taylor's next witness when the court reconvened. During cross-examination, Republic's attorney asked her why her husband had left the courthouse, but received no answer because the court sustained an objection by Taylor's attorney. Shortly thereafter, Republic's attorney asked the court to grant a continuance so that he could subpoena and locate Mr. Salazar. He argued that Taylor's attorney instructed Mr. Salazar to leave during the recess so that Republic would be unable to question him about his conversation with Sgt. Fay. Taylor's attorney responded that he merely told Mr. Salazar that he was not going to call him as a witness, and that it was not his obligation to be Republic's process server. The court gave Republic leave to attempt to subpoena Mr. Salazar, but saw no reason to delay the trial. The court reasoned that Republic's attorney could have subpoenaed Mr. Salazar before the trial, and that Mr. Salazar's testimony would not add anything new.

On appeal, Republic claims the trial court erred in failing to grant the requested continuance. We disagree. The decision to grant or deny a continuance is largely within the trial court's discretion. *Seabaugh v. Milde Farms, Inc.*, 816 S.W.2d 202, 207 (Mo. 1991). "In reviewing a trial court's denial of a continuance based on absence of witnesses, every intendment is made favoring the correctness of that ruling." *Id.* Although a court does not enjoy "absolute or arbitrary discretion," the denial of a continuance will rarely constitute reversible error. *Id.*

We find no abuse of discretion by the trial court in denying Republic's motion for continuance. Mr. Salazar was not a party to the lawsuit, and absent a subpoena or court order was under no obligation to ever be present. Republic unfortunately assumed that it would be able to admit Salazar's statements via the testimony of Sgt. Fay. After the court sustained Taylor's objections to Sgt. Fay's testimony, Republic claims that it became apparent to the parties and the court that Mr. Salazar would be called to testify. If Republic wanted Salazar's statements so badly, it should have taken steps ahead of time to subpoena him and assure his presence. Republic's failure to cover all of its bases is no reason to question the trial court's decision.

Point II is denied.

## Point III: Admissibility of Sgt. Fay's Hearsay Testimony

As noted in our discussion of the previous point, Republic sought to have Sgt. Fay testify about a conversation he had with Mr. Salazar. Since the court sustained hearsay objections to this testimony during cross-examination, Republic later elicited Sgt. Fay's testimony as an offer of proof outside of the hearing of the jury.

Q. Sergeant during your job as an investigating officer of this accident ... was it part of your normal investigating procedure to try to determine the nature and extent of any injuries the involved parties may have had?

A. Yes, sir.

\* \* \* \* \* \*

Q. While you were at the home of Tony Salazar, did you learn any information from him concerning the nature and extent of any injuries Luis Taylor may have had?

A. Yes, Mr. Salazar mentioned that Mr. Taylor was going to seek medical treatment because of a previous injury.

The court found Sgt. Fay's testimony—that Mr. Salazar told him that Taylor was seeking medical treatment because of a pre-

vious injury—to be inadmissible hearsay, and refused the offer of proof. Republic now argues that the trial court erred in refusing to allow Sgt. Fay's testimony.

A hearsay statement is an out-of-court statement offered to prove the truth of the matter asserted. *State ex rel. Missouri Highway and Transp. Com'n v. Buys,* 909 S.W.2d 735 (Mo.App.W.D.1995). Generally, hearsay is inadmissible unless some exception applies.

In this case, there is no question that the desired testimony was hearsay. Republic sought to admit Mr. Salazar's out-of-court statement through the testimony of Sgt. Fay to prove that Taylor had a prior back injury. The only question is whether any hearsay exceptions should have applied. Republic claims there are two such exceptions: (1) a declaration of present bodily condition and (2) an admission against interest. We disagree as to both.

A statement of one's own present bodily condition, pain, or discomfort is recognized in Missouri as a hearsay exception. O'Brien, Mo. Law of Evidence (3rd ed.), § 11–19; Mo. Evidence Restated, § 803(3) (MoBar 2d ed.1993). However, the exception does not apply to this situation because Mr. Salazar's statement was not about his own present bodily condition. The exception does not apply to an out-of-court statement about someone else's bodily condition. Republic's mistake is that it has failed to recognize that the declarant was Mr. Salazar—not Taylor.

Sgt. Fay's testimony about Mr. Salazar's statement about Taylor's prior back injury also was not admissible as an admission against interest. This exception only applies if the statement is an admission by a party to the litigation or by one in privity with that party. *Nettie's Flower Garden, Inc. v. SIS, Inc.,* 869 S.W.2d 226, 229 (Mo. App.E.D.1993). Mr. Salazar is neither.

Point III is denied.

### Point IV: The Court's Failure to "Restrain and Purge" Statements Made During Closing Argument

Republic next complains that the trial court failed to "restrain and purge" statements made by Taylor's attorney during closing argument. Republic specifically refers to the following:

> Taylor's Attorney: Ladies and gentlemen, it appears to me that Mr. Taylor has lost wages and medical bills of $44,114.20. The amount of money you award him to compensate him for the early onset of arthritis, for the pain that he had to endure going through surgery, for the pain and suffering that he went through from the time—from the accident to the date of surgery, and for the suffering that he will have in the future that he would not have had were it not for the car wreck is up to you. I suggest to you that a conservative figure that is used by many people in evaluating personal injury cases—

> Republic's Attorney: Judge, I object, there is no evidence as to that.

> The Court: Yes, sustained as to any reference as to what is used.

> Taylor's Attorney: I would suggest to you that it would be reasonable to consider three times special damages as a verdict in this matter. But, that figure is ultimately up to you. You're the people that get to make the decision as to what is fair and just compensation for Mr. Taylor in this case.

Republic claims that this was improper argument in that it was a misstatement of Missouri law, and that the trial court had a duty, not discretion, to restrain and purge such argument. *Fahy v. Dresser Industries, Inc.,* 740 S.W.2d 635, 641 (Mo.1987). Republic also claims that it was further prejudiced because Taylor's attorney directed this argument at a juror who previously had identified, during voir dire, that his wife was an insurance adjuster.

This point has no merit. First, there is absolutely nothing in the record to substantiate the allegation that Taylor's attorney directed the above statements to a particular juror. Such a claim is pure speculation. Second, the court sustained Republic's objection to the comment, and Republic did not request any further relief. It cannot now complain on appeal that the trial court erred

by taking no more remedial action than was requested. *Clark v. Skaggs Companies, Inc.,* 724 S.W.2d 545, 553 (Mo.App.W.D.1986).

Point IV is denied.

### Point V: Reference to Settlement Negotiations During Closing Argument

■ Republic's final point concerns a comment made by Taylor's attorney during closing argument suggesting that Republic did "not fairly settle" the case. The following is what transpired:

> Taylor's Attorney: Now, ladies and gentlemen, you know, I get attacked. Plaintiffs' attorneys in these cases always get attacked because—
>
> Republic's Attorney: Object. There is no evidence of that, judge.
>
> The Court: Sustained.
>
> Taylor's Attorney: No one who files a lawsuit ever is immune from being accused of having a desire for monetary gain, and it's so easy for people to sit back, *and not fairly settle something,* and then—
>
> Republic's Attorney: Judge, that's the—
>
> The Court: Yes, the objection is sustained.
>
> Republic's Attorney: May we approach the bench?
>
> The Court: The jury may disregard the argument.
>
> [Proceedings at the bench:]
>
> Republic's Attorney: Judge, it is clear case law that this should be a mistrial. You do not get up and talk about settlement in your closing arguments and infer that we didn't settle it. I move for mistrial.
>
> The Court: The motion is denied. I have instructed the jury to disregard.

(Emphasis added.)

Republic argues that the comment made by Taylor's attorney "was erroneous, unduly prejudicial, and materially affected the merits of the case." It claims the trial court erred in (1) failing to properly instruct the jury to disregard the statement, and (2) refusing to grant a mistrial. Taylor claims that the comment was made in response to certain remarks made by Republic's attorney during its closing argument.

■ We agree with Republic that the comment was improper. Reference by litigants to settlement negotiations during argument "is fraught with danger and should be eschewed." *Myers v. Morrison,* 822 S.W.2d 906, 909 (Mo.App.E.D.1991); *Andrews v. Terminal R.R. Ass'n of St. Louis,* 716 S.W.2d 344, 345 (Mo.App.E.D.1986). The theory behind this is that efforts to settle a case should be encouraged, and a party should not be penalized if such efforts fail to materialize. *Nichols v. Blake,* 395 S.W.2d 136, 142–43 (Mo.1965).

■ However, reference to settlement negotiations does not necessarily mandate a mistrial. "Determining the prejudicial effect of final argument and the necessity of the drastic remedy of mistrial is in the sound discretion of the trial court, whose judgment will not be disturbed unless there was a manifest abuse of discretion." *Richardson v. State Highway & Transp. Com'n,* 863 S.W.2d 876, 881 (Mo.1993). The trial court is in a much better position to determine the prejudicial effect of improper closing argument, and is thus better able to decide an appropriate remedy. *Id.* In this case, the court felt that a mistrial was not warranted, and that the appropriate remedy was to instruct the jury to disregard the statement. We find no manifest abuse of discretion in failing to grant a mistrial.

■ The second part to Republic's argument is that the court's instruction that "the jury *may* disregard the argument" was insufficient. Republic suggests that the court's use of the word "may" was improper because the jury could have inferred that they did not have to disregard the argument. Republic cites no authority for this argument. Even if the use of the word "may" was erroneous, the context of the situation suggests that any error was harmless. The judge sustained the objection before Republic's attorney had the chance to finish making it. Given the judge's swiftness, it would have been obvious to the jury that the judge meant for them to disregard the statement.

Point V is denied.

### Conclusion

We affirm the trial court's judgment.

All concur.